IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FREDDIE CASTRO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. |

## **COMPLAINT**

1. This is an action for deprivation of civil rights under color of law and other wrongful acts. This action arises out of both federal and state law for damages resulting from the unlawful conduct of Defendant.

2. This Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 28 U.S.C. §1346(b).

3. Venue in this case is proper under 28 U.S.C. §1391. The events giving rise to the claims in this case occurred in this judicial district.

## FACTUAL ALLEGATIONS

4. In the early morning hours of January 27, 2023, Freddie Castro was transported to the United States Penitentiary in Atlanta, Georgia.

5. At about 8:00 U.S. Marshals transferred custody of Castro and about 70 other inmates to the Bureau of Prisons officers assigned to manage and oversee

the inmate intake and screening process, which is customarily done in the Receiving and Discharge area of the prison.

6. Almost immediately the BOP officers separated a prisoner from the group and informed the group of prisoners that the prisoner they had separated was a sex offender.

7. The BOP officers placed the separated prisoner in a small holding tank located directly in front of two larger holding tanks reserved for holding newly-arrived prisoners for processing.

8. The rest of the inmates, including Castro, were unshackled and put inside of the two larger holding tanks located at the beginning of the hallway entering the R&D Area. Castro was one of the last inmates unshackled, and took that opportunity to get an Officer's attention before being placed inside the holding tank to inform the BOP officers that he was a gang drop out who needed protection.

9. Castro was removed from the general population of inmates and put into the small holding tank with the sex offender. The rest of the inmates were locked into the large holding tanks.

10. Based on information and belief, BOP Officer White informed the larger group of inmates that the prisoners in the small holding tank were "chomos" and "gang dropouts." Officer Williams also told the larger group of inmates,

referring to Castro and another prisoner, Ras Matta, "Those the P.C. bitches right there!" while pointing at Castro and Matta.

11. An inmate named Fedison was removed from one of the large holding tanks to change into institutional clothing. While Fedison was outside of the holding tank, Officer White told Fedison and other officers that Matta and Castro were writing a "tell-all book" and someone needed to "silence them."

12. Inmates in the large holding tanks began to throw things at Castro and Matta and openly threatened to injure and kill Castro and Matta.

13. Officer White and Officer Williams witnessed the behavior of the inmates in the large holding tanks. The officers encouraged the inmates to abuse Castro and Matta.

14. At about 16:00, Officer Fenwick moved all of the inmates in the small holding tanks out of that area to a corner holding tank on the opposite end of the hallway, in front of the Staff Office. Officer Fenwick apologized to Matta and Castro or having to endure several hours of threats, spit, and harassment. Officer Fenwick stated that if she were the Officer in Charge she would have processed Castro and all the other vulnerable inmates first and taken them to the SHU immediately, in order to have prevented the whole ordeal that they had just endured. Officer Frenwick then assured Matta and Castro that they would be quickly processed and taken to the SHU for their protection.

15. Based on information and belief, Officer White and Officer Williams started pulling inmates out of the two large holding tanks at the beginning of the hallway and moving them to their designated housing units. While moving these inmates, Officer Williams separated certain Active STG inmates who expressed a willingness to "see some action" from the rest of the group and held them back to be moved last.

16. While inmates were being escorted to their housing units they would stop in front of the corner holding tank where Castro and Matta were being held to pick up a bedroll and a sack lunch then wait for other officers to arrive to take them the rest of the way. During some of these moments, Officer Williams would act as if he was opening the cell door to the holding tank housing Matta and Castro and the other vulnerable inmates, and ask the group of inmates being escorted if they were "ready to handle business." This action caused some in the group of inmates being escorted to turn towards Castro and the other vulnerable inmates in the corner holding tank, with an aggressive stance suggesting an intent to attack. Then just as suddenly, Officer Williams would laugh and make comments such as, "Oh yeah! I keep forgetting, y'all the P.C. cases," and then Officer Williams would pull his key out and walk off. These incidents caused Castro significant anxiety and fear.

17.     Between 5:30-6:30 p.m., Officer Williams brought out the last group of inmates to collect their bedrolls and sack lunches before escorting them to their designated housing units. The group was comprised mostly of Active STG inmates. Officer Williams stopped at the corner holding tank housing Castro and the other vulnerable inmates, opened the door and ordered this group of Active STG inmates to enter the holding tank with the same vulnerable inmates who had already been removed from this group for their own protection. An Active STG inmate told Officer Williams that if he entered the holding tank he would attack Castro and Matta. Officer Williams became angry and shouted, "I don't give a fuck! This is Atlanta! This ain't no P.C. camp. You fight for your life in Atlanta!" Officer Williams then forced an aggressive group of inmates who had openly threatened to harm Castro and Matta to enter the same holding tank as Castro and Matta with the intent of developing an incident between the inmates.

18.     The STG inmates entered the holding cell and immediately attacked Castro and Matta, striking both Castro and Matta repeatedly. Officers eventually entered the holding tank and removed Matta and Castro and handcuffed them.

19.     Officer White held Matta on the floor while Officer Williams stomped on Matta's lower back and struck Matta in the head several times.

20. Officer Williams then twisted Castro's handcuffs and pushed Castro's head into the wall and struck Castro in the kidneys, while yelling, "This is what we do in Atlanta! Here you fuck or fight!"

21. Addressing his fellow officers, Officer Williams said, "there ain't shit they can do to us [anymore], you hear? There ain't no more Bivens! They can't do shit to us no more!"

22. After observing Officer Williams assault Castro and Matta, Officer Oko told Officer White and Officer Williams, "I see you got all this." Officer Oko and other responding officers then left the area.

23. Officer Willimas then told Officer Fenwick, "Be sure to mark that these inmates were all the same status and were going to the SHU as well."

24. Officer Williams told Officer White, "Make sure you note that these inmates were just like those inmates," indicating the STG inmates and then the vulnerable inmates.

25. Castro was injured in the fracas, and asked for medical attention, but Officer Williams said, "This is y'all's freebie, you hear me? I ain't reporting this shit so ain't no medical."

26. Officer Willims then said to Officer White, "They trying to fuck up our fight club."

27. Castro and Matta were then placed in the SHU, and made calls to their families the next day, January 27, 2023, and told them about the assault.

28. Castro remained in the SHU without medical attention until January 31, 2023, when he was transferred to FCI Butner, where he received treatment for the injuries he received in the assault.

29. Castro served a timely FTCA claim to the Bureau of Prisons.

## CLAIMS FOR RELIEF

### Count 1

### Aiding and Abetting Assault & Battery

30. Castro incorporates each preceding paragraph as if set forth fully here.

31. At all relevant times, Officer Williams and Officer White were acting in the course and scope of their employment with the United States.

32. Officer Williams instigated and incited numerous inmates to assault Castro, and gave them access to the holding pen where Castro was awaiting transfer.

33. Officer White aided and abetted Officer Williams, and did not interfere with Officer Williams' tortious conduct, and further incited and instigated other inmates to attack and assault Castro.

34. Program Statement:3420.11 reads in relevant part:

> 1. .... [e]mployees will immediately report any violation, or apparent violation, of Standards of Conduct to their

        Chief Executive Officer (CEO) or other appropriate authority.

35. Program Statement:3420.11 states in relevant part:

        11 .... [e]mployees of the Bureau have access to official information ranging from personal data concerning staff and inmates to information involving security ... [e]mployees may not make statements or release official information that could breach the security of the institution or endanger any person.

36. Officer White and Officer Williams provided information to the STG inmates that endangered Castro.

37. Program Statement:3420.11 states in relevant part:

        5 .... An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond what is reasonably necessary to subdue an inmate.

38. Officer White and Officer Williams failed to "immediately report" the above-described violations of the Standards of Conduct.

39. Officer Williams' used brutality, physical violence, and intimidating tactics against Castro, and Officer White failed to intervene, and instead laughed and encouraged Officer Williams' assault of Castro.

40. Program Statement:5270.09 states in relevant part:

        When staff witness or reasonably believe that a violation of Bureau regulations has been committed staff must prepare an incident report ... [and] ... prohibited acts in the Greatest Severity level (100 level) and High Severity

level (200 level) may not be informally resolved, and must be referred to the DHO.

41. Officer White and Officer Williams failed to submit an Incident Report after witnessing inmates threatening Castro and witnessing inmates attack Castro.

42. Program Statement:5566.06 states in relevant part:

> Each use of force incident will be documented, reported, and reviewed ... [and] ... all incidents involving the use of force and the application of restraints (as specified in §552.27) must be carefully documented ... All use of force incidents must be reported and investigated to protect staff from unfounded allegations and eliminate the unwarranted use of force.

43. Neither Officer Williams nor Officer White reported the use of force on Castro.

44. These actions as described above constitute the tort of aiding and abetting assault and battery.

45. Castro suffered injuries from the assault.

## Count 2

## Assault & Battery

46. Castro incorporates each preceding paragraph as if set forth fully here.

47. At all relevant times, Officer Williams and Officer White were acting in the course and scope of their employment with the United States.

48. Officer Williams used inmates to carry out an assault and battery on Castro by inciting them to violence by informing the inmates of Castro's status, in violation of Program Statement:3320.11.

49. After inmates told Officer Williams that they would assault Castro if Officer Williams provided access to the holding pen where Castro was located, Officer Williams opened the door to the holding pen and allowed the inmates to assault Castro.

50. After the inmate-on-inmate violence was halted, Officer Williams assaulted Castro.

51. Castro suffered injuries from the assault.

## Count 3

## Negligence

52. Castro incorporates each preceding paragraph as if set forth fully here.

53. At all relevant times, Officer Williams and Officer White were acting in the course and scope of their employment with the United States.

54. At all times pertinent to this Complaint Defendant's employees and agents owed a duty of reasonable care under state law to act lawfully and protect Castro's constitutional, statutory, and common law rights.

55. At all times pertinent to this Complaint, Defendant's employees and agents were subject to a duty of care under state law in the exercise of the custodial

function to protect Castro's constitutional, statutory, and common law rights. The conduct of Defendant's employees and agents as set forth in this Complaint does not comply with the standard of care and includes negligent training, supervision, and discipline of officers; negligent enactment, enforcement, and violation of law enforcement policies and procedures; negligent violation of Castro's constitutional, statutory, and common law rights; and negligent performance of official duties.

56. Defendant's employees and agents negligently failed to obtain and provide timely medical treatment for Castro's injuries.

57. Defendant's employees and agents negligently failed to protect Castro from assault.

58. As a direct and proximate result of Defendant's employees and agents' negligence, Castro suffered deprivations, injuries, and damages.

59. Defendant's employees and agents' negligent or intentional acts and omissions described here caused Castro to suffer serious or severe emotional distress that no reasonable person would be expected to endure.

60. Any normal person in Castro's situation would have experienced severe emotional distress as Castro has.

61. As a direct and proximate result of Defendant's employees and agents' conduct, Castro suffered, and continue to suffer, serious and severe emotional distress that was a reasonably foreseeable consequence of Defendants'

employees and agents' negligent or intentional acts and omissions, entitling Castro to damages.

## RELIEF

WHEREFORE, Plaintiff Castro respectfully requests this Court to grant the following relief:

1. For damages in a reasonable amount to compensate Plaintiff fully for all of his injuries and damages;

2. For declaratory and injunctive relief;

3. For reimbursement of costs and expenses of suit; and

4. For such further relief as the Court deems fair and just.

Respectfully submitted this 12th day of September, 2025.

/s/Andrea S. Hirsch
Georgia Bar No. 666557
Cohen Hirsch, LP
5256 Peachtree Road, Suite 195E
Atlanta, Georgia 30341
Telephone: 678-268-4683
andrea@cohenhirsch.com

Timothy Bechtold
*pro hac vice pending*
Montana Bar No. 4376
Bechtold Law Firm PLLC
PO Box 7051
Missoula, MT 598907
406-721-1435
tim@bechtoldlaw.net
*Counsel for Plaintiff*